IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 16, 2022 Session

**JENNIFER GABY v. TONY GABY**

**Appeal from the Circuit Court for Greene County**
**No.    15CV259TJW        Thomas J. Wright, Judge**
_____

**No. E2022-00217-COA-R3-CV**
_____

This is the second appeal of this action concerning the father's petition to modify the permanent parenting plan for his two children. In the first appeal, we remanded the case back to the trial court for submission of additional findings of fact and conclusions of law. The father now appeals the decision on remand. We vacate the order of the trial court and remand for entry of a new permanent parenting plan for the remaining minor child.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Vacated; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and KRISTI M. DAVIS, JJ., joined.

Crystal G. Jessee, Greeneville, Tennessee, for the appellant, Tony Gaby.

Joseph O. McAfee, Greeneville, Tennessee, for the appellee, Jennifer Gaby.

**OPINION**

**I. BACKGROUND**

Tony Gaby ("Father") and Jennifer Gaby ("Mother") married in 2003. Two children were born of the marriage, "P." and "A." (collectively "the Children"), in November 2004 and July 2007, respectively. The parties were divorced by order of the trial court on August 11, 2017.

The divorce decree incorporated a permanent parenting plan, in which Mother was named primary residential parent of the Children. The trial court limited Father's co-parenting time to 52 days per year as a result of his "apparent lack of an emotional attachment to the Children, his anger management issues, and his unusual work schedule, which made it difficult for him to spend time with the Children." *Gaby v. Gaby*, No. E2020-00790-COA-R3-CV, 2021 WL 3719359, at *1 (Tenn. Ct. App. Aug. 23, 2021).

On August 30, 2018, Father petitioned the trial court to modify the permanent parenting plan, asserting that he had taken significant steps to improve himself and his relationship with the Children. He requested equal co-parenting time. Mother moved for dismissal of the petition. During the pendency of the hearing, Father's relationship with P. deteriorated to the point that she refused to cooperate with his co-parenting time. Her refusal was primarily related to Father's alleged favoritism toward her sister and his relationship with his live-in girlfriend, referred to as "Michelle."

The case proceeded to a hearing on December 2, 2019, at which multiple witnesses testified. Father testified that he changed his schedule to work Monday through Friday from 1 a.m. to 1 p.m., allowing him to be with the Children during the weekday after school and on the weekends. He admitted that if the Children stayed with him during the week, then Michelle or the paternal grandparents would supervise the Children at night and get them ready for school the next morning.

Father stated that he worked with a counselor to introduce Michelle to the Children. He claimed that they responded well to her and that A. had formed a healthy relationship with her. He admitted that he has recently had difficulty maintaining a healthy relationship with P. and that she now refuses to come with him for his co-parenting time or even answer his telephone calls. He claimed that Mother failed to encourage P. to maintain the relationship and that Mother also refused to attend counseling with them, stating that she was not the problem in the relationship.

P. testified that she did not feel comfortable with Father and that he made her feel guilty instead of working to improve the relationship. She agreed that he attended her extracurricular activities but claimed that he only attended to appease the trial court. She further claimed that she witnessed Father and Michelle fighting.

A. agreed that she mostly enjoyed her time with Father and Michelle but admitted that she had also witnessed disagreements between them. She stated that her main concern with Father was his treatment of her sister and her sister's reluctance to visit. She explained that she did not want to hurt anyone and felt "caught in the middle."

Mother testified that the Children are doing well in school and are both involved in extracurricular activities. She confirmed that A. cooperated with Father's co-parenting time and sometimes stayed longer at his house than scheduled. She stated that she had

some concerns about the clothing that A. purchased while with Father and that she had also overheard a heated discussion between Father and Michelle. She explained that she was talking to A. on the telephone when she suddenly heard loud yelling in the background. She also expressed concerns regarding Father's ability to provide structure for the Children during the weekday when homework is required or when they need to arrive in a timely manner for their extracurricular activities. She stated that despite their differences, they remain civil and work well dividing their time with the Children.

Mother stated that P. had more difficulty with Father's co-parenting time. She explained that P. expressed her hesitation about her time with him and sometimes refused to cooperate. Mother denied advising P. not to attend but asserted that she could also not make her attend. She was concerned that forcing visitation would damage their relationship and increase P.'s anxiety in the situation.

Following the hearing, the trial court entered an order finding that there had been a material change of circumstance based upon Father's new schedule that increased his availability for the Children and Mother's failure to facilitate Father's relationship with the Children. The court failed to issue specific findings of fact in support of its decision that a modification of the current plan was in the best interest of the Children. Rather, the court offered a cursory explanation that the "best interest" factors remained as previously found in the prior court hearing. The court modified the plan to increase Father's co-parenting time from 52 to 90 days, with the added time occurring in the summer months.

Father appealed to this court, arguing that the trial court failed to issue sufficient findings of fact and requesting equal co-parenting time with the Children. Neither party disputed the trial court's conclusion that there had been a material change of circumstances. A panel of this Court remanded the case to the trial court for entry of an order containing required findings of fact and conclusions of law necessary for meaningful appellate review. *Gaby*, 2021 WL 3719359, at *1.

Upon remand, the trial court held a hearing on January 14, 2022. The parties were permitted to present arguments on the best interest analysis. Father's counsel requested further specificity on the trial court's best interest findings and further explanation on the calculation of total days of parenting time. The parties provided the trial court with copies of their appellate briefs, which contained their analyses of the best interest factors set forth in Tennessee Code Annotated section 36-6-106(a).

By order entered January 20, 2022, the trial court set forth detailed findings on the best interest factors and concluded that the children's best interest would be served by modifying the parenting plan to provide "a week about schedule during the summer months, continuing the every other weekend schedule during the school year, and having an equal split of the holidays and vacation times." The trial court noted that this order

supplemented its previous April 3, 2020, order. The parenting time remained the same: 90 days to Father and 275 to Mother. Father filed this timely appeal.

## II. ISSUE

The sole and dispositive issue on appeal is as follows: Whether the trial court erred as a matter of law by failing to maximize Father's time with the Children, providing him with only 90 days of co-parenting time.

## III. STANDARD OF REVIEW

"A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions." *Armbrister v. Armbrister*, 414 S.W.3d 684, 692 (Tenn. 2013) (citing *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007)). Therefore, "appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings." *Id.*; *see also* Tenn. R. App. P. 13(d). Likewise, trial courts have "broad discretion in formulating parenting plans" because they "are in a better position to observe the witnesses and assess their credibility." *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (citing *Armbrister*, 414 S.W.3d at 693). On appeal, we review a trial court's decision regarding parenting schedules for an abuse of discretion. *Armbrister*, 414 S.W.3d at 693 (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)). "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standard to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

## IV. DISCUSSION

The trial court found and the parties agreed on appeal that a material change in circumstances had occurred that necessitated a change in the residential schedule. Accordingly, the trial court's opinion on remand and our review on appeal concerns whether the modification itself was in the best interest of the Children pursuant to Tennessee Code Annotated section 36-6-106(a). Father argues on appeal that the trial court failed to fashion a plan that would permit each parent's maximum participation in the

Children's lives. He requests equal co-parenting time and suggests that such an arrangement would be in the best interest of the Children.

The best interest determination "is a fact-sensitive inquiry." *Steakin v. Steakin*, No. M2017-00115-COA-R3-CV, 2018 WL 334445 at *5 (Tenn. Ct. App. Jan. 9, 2018). The determination "'does not call for a rote examination of each of [the relevant] factors and then a determination of whether the sum of the factors tips in favor of or against the parent.'" *Id.* (quoting *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005)). Rather, "'[t]he relevancy and weight to be given each factor depends on the unique facts of each case.'" *Id.* The trial court is directed to consider the following factors when conducting the best interest analysis:

(1)      The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2)      Each parent's past and potential for future performance of parenting responsibilities[;]

(3)      Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4)      The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5)      The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6)      The love, affection, and emotional ties existing between each parent and the child;

(7)      The emotional needs and developmental level of the child;

(8)      The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child;

(9)      The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10)      The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11)   Evidence of physical or emotional abuse to the child, to the other parent or to any other person.  The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12)   The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13)   The reasonable preference of the child if twelve (12) years of age or older . . .;

(14)   Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15)    Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-106(a)(1)–(15) (emphasis added).[1]

As with all cases, we recognize that time has marched on during this litigation.  P. attained the age of majority during the pendency of this appeal in November 2022.  She is no longer subject to the parameters of the trial court's permanent parenting plan.  Our review of the opinion on remand reveals that the trial court placed great weight on the sibling relationship in determining the residential schedule in accordance with the best interest of both children.  The court referenced P.'s strained relationship with Father in its consideration of Factors 1, 6, 9, 12, 13, and 14.  Citing Factor 15, the court further found that Father evidenced significant effort in his attempt to improve his parental role but that any progress was stalled due to P.'s feelings toward him.  The court explained throughout the opinion that A. desired more time with Father at one point but that she now presented as a reluctant participant, in part, due to her allegiance to the sibling relationship.

With these considerations in mind, we hold that remand, once again, is appropriate for the trial court to solely consider the best interest of A., the only remaining minor child subject to the parameters of a permanent parenting plan.  Upon remand, we encourage the parties to work together with the trial court to fashion a residential schedule that is in the minor child's best interest and that maximizes each parent's participation in her life for the remainder of her adolescence.

---

[1] Effective March 18, 2022, the General Assembly has amended Tennessee Code Annotated § 36-6-106(a) by adding a new subdivision for the court's consideration, requiring the court to consider 16 factors.  *See* 2022 Tenn. Pub. Acts, Ch. 671 § 1 (H.B. 1866).  However, because the petition in this case was filed before the effective date of the amendment, the statutory best interest factors provided in the prior version of the statute apply here.  *See, e.g.*, *In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017).

## V. CONCLUSION

For the reasons stated above, we vacate the decision of the trial court. The case is remanded for entry of a revised permanent parenting plan for the remaining minor child. Costs of the appeal are taxed equally to the parties, Jennifer Gaby and Tony Gaby.

_____
JOHN W. MCCLARTY, JUDGE