
IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 21, 2017 Session

## DANIEL PASCHEDAG v. PATRICIA L. PASCHEDAG

**Direct Appeal from the Circuit Court for Montgomery County**
**No. CC-15-CV-682     Ross H. Hicks, Judge**

_____

### No. M2016-00864-COA-R3-CV

_____

This is an appeal from the trial court's designation of a child's primary residential parent. After an analysis of the best interest factors set forth in Tennessee Code Annotated section 36-6-106(a), the court concluded that it would be in the child's best interest to designate Mother as the child's primary residential parent. Father appealed. Mother has requested attorney's fees incurred in defending this appeal. We affirm the judgment of the trial court, grant Mother's attorney's fees incurred on appeal, and remand to the trial court to determine the proper amount of Mother's award of attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Daniel Paschedag.

Steven C. Girsky, Clarksville, Tennessee, for the appellee, Patricia L. Paschedag.

### OPINION

#### I. FACTS & PROCEDURAL HISTORY

Appellant, Daniel Paschedag ("Father"), and Appellee, Patricia L. Paschedag ("Mother"), met in Germany and married on May 9, 2005. Father is a German citizen who is a permanent resident of the United States. When the parties separated, they were living in Clarksville, Tennessee. By the time of trial, Father had moved to San Antonio, Texas. A son was born of the marriage on November 11, 2011 (the "Child"). The Child is speech delayed but otherwise healthy.

Father filed for divorce on April 6, 2015. In his complaint, Father asked the court to designate him as the Child's primary residential parent and to allow him to move with the Child to Texas. He alleged that he had taken a job in San Antonio making more money than he was able to make in Clarksville. On April 14, 2015, Wife filed an answer to Father's complaint for divorce, alleging that she had been with the Child the majority of the time since Father moved to Texas and that she had always been the Child's primary caregiver. Mother subsequently filed a counter-complaint for divorce from Father and requested that she be named the Child's primary residential parent. The parties resolved some of the issues related to their divorce through mediation, but all issues pertaining to the Child were reserved for trial.

The trial of this matter took place on October 6, 2015.[1] Father testified that he was living in San Antonio and coaching soccer there. Father testified that he had enrolled the Child in speech therapy in San Antonio. Father also speaks German with the Child, which has been approved by his speech therapists. According to Father, he loves his son, and the Child is a joyful little boy who enjoys swimming, karate, and soccer. Father stated that he had some difficulty speaking with the child on the phone every night because Mother does not always answer when he calls. Mother testified that she has always been the Child's primary caregiver. According to Mother, she was generally responsible for feeding, waking up with the Child during the night, changing his diapers and clothes, bathing him, cooking, cleaning, grocery shopping, and taking the Child to the doctor. Mother testified that, although both parties were soccer coaches, she was the one responsible for securing child care when she and Father were both working. After they separated, the parties attempted to share parenting time with the Child equally, but Mother alleged that she still spent more than half of the time with the Child because she took care of him on most weekends.

Each party also called witnesses to testify in their favor with regard to parenting issues. Father offered testimony at trial to insinuate that Mother frequently left the Child unattended in her car at soccer practices and in hotel rooms during overnight trips with the soccer team. Mother offered testimony to refute that characterization of her behavior and to bolster her assertions that she was the Child's primary caregiver.

After the conclusion of both parties' proof, the trial court announced that it was declaring the parties divorced pursuant to Tennessee Code Annotated section 36-4-129. The court then made an oral ruling with respect to custody of the Child, ultimately designating Mother as the Child's primary residential parent. In explaining its decision, including its analysis of the best interest factors set forth in Tennessee Code Annotated section 36-6-106, the court stated the following:

---

[1]The trial court's ruling with respect to the Child is the only issue on appeal, and we will therefore limit our discussion of the facts presented at trial to those relevant to custody of the Child.

[T]he reality now is that [Mother's] here and [Father] is there. And the distance being what it is, it's going to make exercising parenting time difficult. The distance alone will cause problems.

. . . . [T]he Court has considered as it is required to consider certain factors that go into the Court's decision-making process regarding children and parenting. I have considered the love, affection and emotional ties that exist between each of these parents and their son. I have considered the disposition of these parents, based on the testimony given, the disposition that they each have to provide the child with food, clothing, medical care, education and any other necessary care that he might need. I have also considered the degree to which each of the parents in the past have been the primary caregiver of [the Child]. I have considered the importance of continuity in the life of this child. Since he is of tender years, he needs a more structured home life than, say, a teenager. And so it's very important that he have continuity in his life.

. . . . [L]iving out of a suitcase is no fun for anyone. It is especially no fun for a child. They need . . . structure. They need routine. . . . Especially when you're going between Clarksville and San Antonio. . . . And I have considered that in my decision-making process in what the parenting time should be.

I've also considered the stability of each of the parties. I find that both of these are very good parents. Sure, each of them can point a finger at the other and come up with a time or two when they think the other one dropped with ball with regard to parenting. But overall, considering all of the testimony, the Court believes and finds that both of these parents are good parents. I don't find . . . any flaw in their parenting. Sure, there were things maybe that could be done better. Isn't that true of all of us who have children? But as far as taking care [of the Child], I think they have both done a good job.

I have also considered the stability of [the parties'] employment. Both parents seem to be stable there. I don't see any problems with that.

I've also considered whether there is any mental or physical health problems with regard to both the parents and the child, and I don't know of any. [The Child] has the need for . . . help with his speech. . . . Each of you have indicated to the Court that you have a plan to be sure that he is

exposed to the assistance of a speech therapist . . . until there is an indication by the speech therapist that he is no longer in need of that.

. . . . I think it's wonderful that [Father] is speaking German to [the Child]. . . .

I have considered the degree to which these parents have demonstrated in the past and the likelihood that in the future they will facilitate a good and proper relationship with the other parent. . . . I think you've all demonstrated a willingness to do that. . . . And I believe both of you will do that.

There is no third person in the life of either one of you at this point and so there is no need for me . . . to judge as far as their character is concerned. . . .

. . . . I've also considered . . . the location of the residences of the parties and how that might affect the best interest of the child.

The court then concluded as follows:

Each of these factors [is] designed to make the Court consider the best interest of the Child as it relates to each of these factors. And I think I have done that.

And after doing so, I name [Mother] the primary residential parent. I adopt her parenting plan with the exception that [Father] is to have each fall and spring vacation. I'll leave undisturbed the summer vacation proposal of six weeks.

Father filed several motions to alter or amend the court's ruling. Following the trial of this matter and the court's oral ruling, the trial court judge who heard the proof and issued a ruling thereon retired before a written final decree and permanent parenting plan could be entered. "Based upon the testimony of the parties and witnesses, and a review of the entire record," the new trial judge for Montgomery County Circuit Court entered the final decree in this matter on March 24, 2016. In this decree, the court essentially adopted the oral ruling of the previous judge, including the findings and conclusions with respect to custody of the Child. That same day, the court entered an order on Father's second motion to alter or amend or for a new trial, holding the following:

4

1.    This matter was heard before a previous Court and this Court has reviewed the transcript of the hearing.  The Court is familiar with the record, and these proceedings may continue without prejudice to the parties.[2]

2.    It is apparent the previous Judge adopted the Mother's parenting plan with some amendments, however, the language in the Plan is clearly not workable, specifically the language that states that the Father's visitation cannot interfere with the child's school or other activities.  The parties cannot work through this subjective language in this Order.  This language will be removed in its entirety from the plan.

Following another motion to alter or amend filed by Father, the trial court entered an amended final decree of divorce on April 11, 2016, that incorporated a revised residential parenting schedule, which included more specific language with regard to Father's visitation time.  Father has appealed the court's designation of Mother as the Child's primary residential parent.

## II.  ISSUES PRESENTED

Father presents the following issue for review on appeal, which we have restated:

1.    Whether the trial court erred in designating Mother as the Child's primary residential parent?

Mother presents the following additional issue for review, which we have restated:

2.    Whether Mother should be awarded attorney's fees on appeal?

## III.  STANDARD OF REVIEW

In nonjury cases, this Court's review is *de novo* upon the record of the proceedings in the trial court, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates against those findings.  Tenn. R. App.

---

[2]Rule 63 of the Tennessee Rules of Civil Procedure sets forth the mechanism by which a successor judge can proceed in the place of an original judge, stating in part that "[i]f a trial or hearing has been commenced and the judge is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties."  Tenn. R. Civ. P. Rule 63.  On appeal, Father challenges the substance of the trial court's ruling designating Mother as the primary residential parent.  He has not challenged the procedure by which the successor judge completed the proceedings in this case.

P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law, however, are afforded no such presumption. *Campbell v. Florida Steel,* 919 S.W.2d 26, 35 (Tenn.1996).

### IV. DISCUSSION

### 1. <u>Designation of Primary Residential Parent</u>

Father challenges the trial court's decision to designate Mother as the Child's primary residential parent. Trial courts have broad discretion in fashioning child custody and visitation arrangements that best suit the unique circumstances of each case. *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn.1999). This is because such decisions often hinge on subtle factors, such as the parents' demeanor and credibility during proceedings. *Rountree v. Rountree*, 369 S.W.3d 122, 129 (Tenn. Ct. App. 2012). However, that discretion is limited to some degree by the statutory directive that such determinations "shall be made on the basis of the best interest of the child." Tenn. Code. Ann. § 36-6-106(a). Additionally, Tennessee Code Annotated section 36-6-106 directs courts to consider "all relevant factors," including a non-exclusive list of fifteen factors, when determining the best interests of a child in a primary residential parent determination. "Determining a child's best interest is a 'fact-sensitive inquiry'" that does not call for "'rote examination of each of [the relevant] factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case.'" *Solima v. Solima*, No. M2014-01452-COA-R3-CV, 2015 WL 4594134, at *4 (Tenn. Ct. App. July 30, 2015) (*no perm. app. filed*) (quoting *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005)). To that end, the determination of what is in a child's best interest could turn on a single factor. *See In re Marr*, 194 S.W.3d at 499.

On appeal, Father's argument that the trial court erred in designating Mother as the Child's primary residential parent consists simply of a recitation of the same evidence and testimony that the trial court heard and considered before making its determination, followed by Father's assertion that the trial court, after hearing this evidence, should have come to a different conclusion regarding several of the best interest factors. After addressing each factor, Father argues that the court should have concluded the following:

The final Tenn. Code Ann. § 36-6-106[(a)(15)] tally is as follows:

> *Father – 6 factors favor [Father]*
> *Mother – 0 factors favor [Mother]*
> *Tie – 3 factors*
> *N/A – 4 factors*

6

Father asserts that, based on the foregoing, he should have been named the Child's primary residential parent. We disagree. As we have already stated, the determination of what is in a child's best interest does not call for rote examination of each and every factor and then a determination of whether the sum of the factors tips in favor of or against the parent. A best interest analysis could turn on a single factor. *See In re Marr*, 194 S.W.3d at 490. Even if we agreed with Father's conclusions on each of these factors, which we do not, child custody litigation is not a sporting event that can be determined by simply tallying up wins and losses.

In sum, Father's approach to this appeal does not take into account the deferential standard of review by which we review a trial court's custody arrangement. *See Koch v. Koch,* 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993) ("Trial courts are vested with wide discretion in matters of child custody and the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion."). He has not alleged, much less proven, any error that would amount to an abuse of discretion by the trial court. Father's arguments to this Court that he simply does not agree with the conclusion reached by the trial court are unavailing. The trial court conducted a proper best interest analysis pursuant to Tennessee Code Annotated section 36-6-106(a), and the evidence does not preponderate against the trial court's findings. We conclude that the determination made by the trial court was within the spectrum of rulings that could reasonably flow from the applicable facts and law, and we therefore affirm the judgment of the trial court designating Mother as the Child's primary residential parent.

## 2. <u>Mother's Attorney's Fees on Appeal</u>

Mother has requested that this Court award her the attorney's fees she has incurred on appeal. The determination of whether to award attorney's fees on appeal is within the discretion of the appellate court. *Moses v. Moses*, E2008-00257-COA-R3-CV, 2009 WL 838105, at *10 (Tenn. Ct. App. Mar. 31, 2009) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). Furthermore, Tennessee Code Annotated section 36-5-103(c) applies to awards of attorney's fees on appeal. *See Schofner v. Schofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). Mother points out that the record in this case shows that Mother earns approximately $37,200.00 per year as a school teacher and coach, while Father earns approximately $65,000.00 per year. In the exercise of our discretion, we conclude that Mother is entitled to an award of attorney's fees incurred defending Father's appeal of the trial court's custody arrangement. We remand this matter to the trial court to determine the appropriate amount of attorney's fees to which Mother is entitled.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court, grant Mother her attorney's fees incurred on appeal, and remand to the trial court to determine the proper amount of Mother's award of attorney's fees. Costs of this appeal are taxed to the appellant, Father, and his surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE