IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 1, 2019

## WILLIAM MICHAEL GRISSOM v. NICOLE XIOMARA GRISSOM

**Appeal from the Chancery Court for Crockett County**
No. 10090    George R. Ellis, Chancellor

_____

**No. W2018-01570-COA-R3-CV**

_____

The trial court designated Father primary residential parent of the parties' minor child, and adopted Father's proposed parenting plan. Mother appeals. Because we conclude that the trial court's order regarding the designation of the child's primary residential parent does not contain sufficient findings of fact such that meaningful appellate review is possible, we vacate the order of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and ANDY D. BENNETT, JJ., joined.

G. Michael Casey, Jackson, Tennessee, for the appellant, Nicole Xiomara Grissom.

Andrea D. Sipes, Jackson, Tennessee, for the appellee, William Michael Grissom.

## OPINION

### Background

This is a child custody dispute. The parties at issue, William Michael Grissom ("Father") and Nicole Xiomara Grissom ("Mother") married on September 24, 2012, and have one minor child together ("the Child"). The child was born in 2012. Father filed for divorce on July 11, 2016, in the Chancery Court for Crockett County ("trial court"); therein, Father alleged that the parties separated in January of 2016 and that Mother had since moved to Mississippi. The complaint for divorce further provided that the parties had been exercising parenting time by alternating weeks with the child but that this arrangement was no longer feasible. Father alleged that the living conditions in Mother's new home were not suitable for the Child and requested that the trial court issue an

emergency custody order naming Father the primary residential parent and allowing Mother parenting time every other weekend. While Father's request for ex parte relief was denied, the trial court set the matter for hearing and on August 24, 2016, entered an order naming Father primary residential parent and approving the temporary parenting plan proposed by Father.

The parties eventually settled all of the issues surrounding their divorce aside from the matter of custody of the Child. As such, the matter was set for trial on June 20, 2018. The trial court heard testimony from the parties, Mother's boyfriend, the maternal grandmother, Father's sister, and various other family members and friends. Overall, the testimony at trial reflected that the Child is happy, well-adjusted, and has a strong relationship with both parents. Mother and Father both confirmed that the Child has a loving relationship with each of them, and they agreed that it is best for the Child to maintain a strong bond with both parents. The parties disputed, however, who was better suited to be the primary caregiver of the Child, in light of various factors such as the parties' work schedules and continuity in the Child's current schedule. For example, Father was adamant that because he had acted as the primary residential parent for nearly two years leading up to the hearing, it was best for the Child to remain in her current routine. Mother, on the other hand, pointed out that Father's work hours are far more irregular than Mother's are and that the Child is often cared for by Father's family while Father is at work.[1] As such, Mother maintained that because she has a more regular 7:30 a.m. to 4:00 p.m. work schedule, the Child would be able to spend more time in the care of an actual parent if the trial court designated Mother primary residential parent.

At the close of proof, the trial court concluded that it was in the best interests of the Child to name Father primary residential parent and to approve Father's proposed plan. Under this plan, Father has 285 days of parenting time, while Mother spends every other weekend with the Child for a total of 80 days. The trial court stated, without any further explanation, that it had considered the statutory best interest factors and that by its calculation, the allocation of the factors was "[t]en for the father and three for the mother." A written order reiterating this finding was entered July 30, 2018.

Mother thereafter filed a timely notice of appeal to this Court.

## Issues Presented

Mother raises the following issues on appeal, which have been taken from her brief and slightly restated:

1. Whether the trial court erred in designating Father as the child's primary residential parent.

---

[1] Father is employed as the manager of a restaurant, while Mother works in a medical office.

2. Whether the trial court erred in adopting Father's proposed parenting plan.

3. Whether the trial court erred in ordering Mother to pay the court costs incurred in this matter.

## Analysis

Because this case was tried by the court sitting without a jury, our review is de novo upon the record with a presumption that the findings of fact are correct unless the evidence preponderates otherwise. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); Tenn. R. App. P. 13(d). We review the legal conclusions of the trial court de novo with no such presumption of correctness. *Chaffin v. Ellis*, 211 S.W.3d 264, 285 (Tenn. Ct. App. 2006). In weighing the preponderance of the evidence, the trial court's findings of fact that are based on witness credibility are given great weight, and they will not be overturned absent clear and convincing evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2002); *see also Reeder v. Reeder*, 375 S.W.3d 268, 278–79 (Tenn. Ct. App. 2012) (citing *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997)) ("Decisions concerning custody and visitation often hinge on subtle factors, such as the parents' demeanor and credibility during the proceedings.").

We first address Mother's argument that the trial court erred in naming Father the primary residential parent. Decisions involving the custody of a child are among the most important decisions faced by the courts. *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001). Indeed, "[b]y statute as well as case law, the welfare and best interests of the child are the paramount concern in custody, visitation, and residential placement determinations, and the goal of any such decision is to place the child in an environment that will best serve his or her needs." *Burden v. Burden*, 250 S.W.3d 899, 908 (Tenn. Ct. App. 2007) (quoting *Cummings v. Cummings*, No. M2003-00086-COA-R3-CV, 2004 WL 2346000, at *5 (Tenn. Ct. App. Oct. 15, 2004)). As such, "[t]rial courts have broad discretion to fashion custody and visitation arrangements that best suit the unique circumstances of each case, and the appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation." *Reeder*, 375 S.W.3d at 278 (citing *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999)); *see also C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (quoting *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013)) ("[D]etermining the details of parenting plans is peculiarly within the broad discretion of the trial judge.").

While trial courts are afforded broad discretion in this area, "they still must base their decisions on the proof and upon the appropriate application of the applicable principles of law." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996) (citing *D. v. K.*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995)). Thus, a trial court's decision regarding custody will be set aside only if it "falls outside the spectrum of rulings that

might reasonably result from an application of the correct legal standards to the evidence found in the record." ***In re Adoption of A.M.H.***, 215 S.W.3d at 809.

A trial court's broad discretion on custody matters extends to the question of which parent should be named primary residential parent. *See **Kathryne B.F. v. Michael David B.***, No. W2014-01863-COA-R3-CV, 2015 WL 4366311, at *8 (Tenn. Ct. App. July 16, 2015) (quoting ***In re Shayla H.***, No. M2013-00567-COA-R3-JV, 2014 WL 2601564, at *5 (Tenn. Ct. App. June 9, 2014)) ("'[T]rial courts have broad discretion in determining which parent should be the primary residential parent[.]'"). "Thus, 'the ultimate question as to who should be the primary residential parent on appeal is whether the trial court abused its discretion in its selection.'" ***Id.*** (quoting ***Maupin v. Maupin***, 420 S.W.3d 761, 770 (Tenn. Ct. App. 2013)). "In choosing which parent to designate as the primary residential parent for the child, the court must conduct a 'comparative fitness' analysis, requiring the court to determine which of the available parents would be comparatively more fit than the other." ***Chaffin***, 211 S.W.3d at 286 (citing ***Bah v. Bah***, 668 S.W.2d 663, 666 (Tenn. 1983)). "In engaging in this analysis, the court must consider the factors set out in Tennessee Code Annotated § 36-6-106(a)." ***Id.*** (footnote omitted).

The factors provided in section 36-6-106(a) are as follows:

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by §33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-106(a)(1)–(15).

The foregoing factors are non-exclusive, **Beyer v. Beyer**, 428 S.W.3d 59, 71 (Tenn. Ct. App. 2013), and "determining a child's best interest is a fact-sensitive inquiry." **Solima v. Solima**, No. M2014-01452-COA-R3-CV, 2015 WL 4594134, at *4 (Tenn. Ct. App. July 30, 2015). Consequently, we have held that

> [a]scertaining a child's best interests does not call for a rote examination of each of [the relevant] factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

**Id.** (citing **In re Marr**, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005)).

While "there is no statutory requirement that the court list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination," the statute nevertheless "requires the trial court to consider all the applicable factors." **Murray v. Murray**, No. M2009-01576-COA-R3-CV, 2010 WL 3852218, at *8 (Tenn. Ct. App. Sept. 28, 2010). Moreover, "this Court has encouraged trial courts to 'be as precise as possible in making child custody findings' in order to facilitate meaningful appellate review." **Belardo v. Belardo**, No. M2012-02598-COA-R3-CV, 2013 WL 5925888, at *7 (Tenn. Ct. App. Nov. 1, 2013) (citing **In re Elaina M.**, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at *8 (Tenn. Ct. App. Oct. 25, 2011)).[2]

---

[2] In both **Belardo** and **Elaina M.**, we expressed concern that the case law holding that trial judges need not articulate the factors pursuant to Tennessee Code Annotated Section 36-6-106(a) appears to conflict with the intent of Tennessee Rule of Civil Procedure 52.01, which states

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

In that vein, Tennessee case law reflects that meaningful appellate review is far more feasible when the trial court's order demonstrates that it indeed considered the factors enumerated in section 36-6-106, and clearly articulates its reasoning in reaching its conclusion as to best interest. For example, in **Renken v. Renken**, No. M2017-00861-COA-R3-CV, 2019 WL 719179, at *5 (Tenn. Ct. App. Feb. 20, 2019), this Court vacated the portion of the trial court's order modifying the parties' parenting plan where the trial court's best interest analysis was limited to a single paragraph in its final order. The trial court's findings in **Renken** provided that

> the Guardian Ad Litem states that it is in the best interests of the children that the current Plan be modified whereby the day to day schedule is modified to reflect that the parties each have 182.5 days and shall exchange the children on a week on, week off basis, exchanging from school on Mondays. The Court adopts the position of the Guardian Ad Litem.

*Id.* at * 5. As such, we concluded that the trial court failed to undertake the necessary fact-intensive analysis, such that this Court was unable to appropriately evaluate the best interest determination. Indeed, we noted that the trial court's order must "demonstrate consideration of the relevant factors." *Id.*

In contrast, in **Bell v. Bell**, No. E2016-01180-COA-R3-CV, 2017 WL 2199164 (Tenn. Ct. App. May 18, 2017), we concluded that the trial court's findings of fact and conclusions of law in a custody dispute were sufficient despite the mother's argument on appeal that the findings were inadequate. After the trial court granted the father's petition to modify the parties' custody arrangement, mother appealed to this Court, urging that the trial court failed to adequately articulate why a change in custody would be in the children's best interests pursuant to the statutory factors. *Id.* at *9. In rejecting the mother's argument, we pointed out that "the [t]rial [c]ourt made detailed findings . . . as to the [c]hildren's best interest." *Id.* While the trial court did not explicitly "identify the statutory factors correlative to its findings[,]" we concluded that this was "not a fatal error." *Id.* We reached this conclusion, however, in light of the fact that the trial court did make explicit findings explaining, "among other things, that both parents love the [c]hildren, [m]other's demonstrated lack of concern with the [c]hildren's education, and that [f]ather will better tend to the [c]hildren's educational needs." *Id.* Because in that case the mother exhibited substantial issues in attending to the children's educational needs, the trial court also noted that factor four of section 36-6-106(a) was of particular importance under the circumstances. *Id.* at *10. Accordingly, although the trial court did not specifically state the statutory factors it deemed applicable to its findings, "it clearly did make findings" and explained its reasoning. *Id.* As such, the trial court's decision to increase the father's parenting time and decrease the mother's was affirmed. *Id.* at *11.

---

We reiterate this concern in light of the present case.

This Court also addressed the adequacy of a best interest analysis in ***Paschedag v. Paschedag***, No. M2016-00864-COA-R3-CV, 2017 WL 2365014 (Tenn. Ct. App. May 31, 2017). Here, the father appealed the trial court's initial custody determination that the mother would remain the primary residential parent of the parties' minor son. ***Id.*** at *4. In that case, the trial court gave an oral ruling at the end of trial in which it discussed the best interest factors as applied to the parties' situation. ***Id.*** at *2. Although the trial court acknowledged that both parents loved and adequately cared for the child, the trial court also noted that the mother lived in Tennessee and that the father was living in San Antonio, Texas. ***Id.*** As such, the trial court discussed the particular challenges of the parties' situation, pointing out that "since [the child] is of tender years, he needs a more structured home life . . . so it's very important that he have continuity in his life." ***Id.*** Accordingly, the trial court ultimately concluded that it was in the child's best interest for the mother to continue being the primary caregiver for the child. ***Id.***

On appeal, the father argued that because the final "tally" of the 36-6-106(a) factors weighed in his favor, the trial court erred in naming the mother primary residential parent. ***Id.*** at *4. Although the trial court made specific findings of fact regarding the child's best interest, father argued on appeal that more of the factors favored him and that consequently, the trial court's ruling was in error. Specifically, the father urged that the trial court's analysis should have been the following:

> The final Tenn. Code Ann. § 36-6-106[(a)(15)] tally is as follows:
> Father—6 factors favor [Father]
>
> Mother—0 factors favor [Mother]
>
> Tie—3 factors
>
> N/A—4 factors

***Id.*** at *4. "Father assert[ed], based on the foregoing, that he should have been the child's primary residential parent." ***Id.*** This Court, however, disagreed, noting that father's proposed analysis was the "rote examination of each and every factor" that trial courts must avoid in conducting a best interest analysis. ***Id.*** (citing ***In re Marr***, 194 S.W.3d at 490). Indeed, we stated that "child custody litigation is not a sport that can be determined by simply tallying up wins and losses." ***Id.*** In that case, the trial court clearly determined that continuity was a particularly heavy factor, especially in light of the child's young age, seeing as the child had primarily resided in Tennessee with the mother. ***Id.*** at *2–3. Because we determined that the trial court undertook "a proper best interest analysis[,]" we affirmed the judgment of the trial court designating the mother primary residential parent. ***Id.*** at *5. Importantly, the ***Paschedag*** court rejected the notion that a simple, mechanical tallying of the section 36-6-106(a) factors is a sufficient analysis to determine where a child's best interest lies.

Although we acknowledge that a trial court is not explicitly required to "list and discuss each factor in section 36-6-106[,]" *Keisling v. Keisling*, 196 S.W.3d 703, 723 (Tenn. Ct. App. 2005),[3] the foregoing cases demonstrate that "meaningful appellate review" is only obtainable when the trial court puts forth some explanation as to how it reaches its decision in a best interest analysis. *Belardo*, 2013 WL 5925888, at *7. This principle is reflected in many other cases addressing child custody. *See, e.g.*, *Kelly v. Kelly*, 445 S.W.3d 685, 696 (Tenn. 2014) (concluding that the trial court did not abuse its discretion in designating mother the primary residential parent "[i]n light of the trial court's clearly articulated findings."); *Henegar v. Henegar*, No. M2015-01780-COA-R3-CV, 2016 WL 3675145, at *9–12 (Tenn. Ct. App. June 29, 2016) (concluding that the trial court did not abuse its discretion in its best interest analysis, where the trial court entered detailed findings of fact "spanning 34 paragraphs[,]" such that the appellate court was able to "carefully review[] all of the applicable statutory factors in conjunction with" those findings); *Williams v. Williams*, No.W2016-01602-COA-R3-CV, 2017 WL 3535322, at *3–4 (Tenn. Ct. App. Aug. 17, 2017) (noting that the trial court "made extensive written findings of fact with regard to what was in the [c]hildren's best interest" and that as such, "the trial court conducted a proper best interest analysis pursuant to Tennessee Code Annotated section 36-6-106(a)"); *Nelson v. Justice*, No. E2017-00895-COA-R3-CV, 2019 WL 337040, at *22–24 (Tenn. Ct. App. Jan. 25, 2019) (appellate court was able to conclude that the evidence did not preponderate against the trial court's findings where the trial court "made an exhaustive review of the relevant factors and found they weighed in favor of naming [m]other the primary residential parent.").

Likewise, while there is no mandate that a trial court make credibility findings during a custody dispute, it is well-settled that such findings are often essential to our review of custody matters. *See, e.g.*, *Reeder*, 375 S.W.3d 268, 278–79 (citing *Adelsperger*, 970 S.W.2d at 485 ("Decisions concerning custody and visitation often hinge on subtle factors, such as the parents' demeanor and credibility during the proceedings."); *Belardo*, 2013 WL 5925888, at *10 (noting that where the trial court determined that one of the best interest factors weighed in favor of the mother based on its "assessment of both [m]other's and [f]ather's credibility[,]" this Court would not reevaluate that assessment absent clear and convincing evidence); *Kincade v. Kincade*, No. M2017-00797-COA-R3-CV, 2018 WL 1631415, at *5 (Tenn. Ct. App. Apr. 4, 2018) ("This credibility determination was instrumental in the court's final determination because . . . most factors weighed equally in favor of both parents."). Consequently,

---

[3] Even in *Keisling*, we noted that the "absence of an explicit discussion of each factor" was not fatal to the trial court's decision in light of the fact that the trial court "addressed the overriding issue, the effect on the children of [m]other's . . . persistent allegations against [f]ather" regarding sexual abuse. 196 S.W.3d at 723. Accordingly, we do not read *Keisling* to mean that trial courts are always excused from explaining their reasoning in a best interest analysis; rather, we simply concluded that under those particular circumstances the omission was not fatal because the trial court clearly addressed the dispositive problem in that case. As discussed at length *supra*, this is distinguishable from the trial court's action in the present case.

although there is no statutory requirement that trial courts list and discuss each best interest factor and make credibility findings, doing so is certainly the best practice given the fact-sensitive nature of custody determinations, and the incredible importance of the subject matter. *See Steen*, 61 S.W.3d at 327 (citations omitted) ("Once into the arena of the best interests of the children we face one of the most important decisions that any court has to make . . . the best interests of the children is the polestar, the alpha and omega.").

Historically, appellate courts were presented with two avenues in responding to a trial court's failure to make adequate findings of fact and conclusions of law: (1) vacate and remand for the trial court to make the appropriate findings; or (2) conduct a review of the facts of the case without any deference to the trial court's ruling. *Compare Renken*, 2019 WL 719179, at *5; *Paschedag*, 2017 WL 2365014, at *4, *with Gooding v. Gooding*, 477 S.W.3d 774, 783 (Tenn. Ct. App. 2015) ("Because there are no findings of fact for us to review, we shall conduct our own de novo review to first determine where the preponderance of the evidence lies and then determine whether the evidence, when applied to the applicable legal principles, provides a proper factual foundation for the decision challenged on appeal, that being the parenting schedule."). The more modern remedy, however, appears to be vacation of the trial court's ruling and remand for adequate findings, in light of the Tennessee Supreme Court's directive that this Court should not "relieve trial courts of the 'high judicial function' required of judicial decision-making by conducting 'archeological digs' of the record in an effort to support a trial court's decision." *Heun Kim v. State*, No. W2018-00762-COA-R3-CV, 2019 WL 921039, at *6 (Tenn. Ct. App. Feb. 26, 2019) (quoting *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 312 (Tenn. 2014)).

Shifting our attention to the present case, the trial court's final order contains the following in regards to the best interest factors:

> After listening to testimony in open Court, the Court fully considered all of the statutory factors enumerated in T.C.A. § 36-6-106 and in taking into account the child's best interest, including a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors. Upon considering these statutory [sic] the Court hereby finds as follows:
>
> i. factor 1 goes to both the Father and Mother;
>
> ii. factor 2 goes to the Father;
>
> iii. factor 3 is not applicable in this case;

iv. factor 4 goes to the Father;

v. factor 5 goes to the Father and Mother;

vi. factor 6 goes to the Father and Mother;

vii. factor 7 goes to the Father;

viii. factor 8 goes to the Father;

vix. factor 9 goes to the Father;

x. factor 10 goes to the Father;

xi. factor 11 is not applicable in this case;

xii. factor 12 goes to the Father;

xiii and factors 13, 14, and 15 are not applicable.

Therefore upon consideration of these statutory factors, the Court finds ten (10) factors in favor of the Father and three (3) factors for the Mother. Based upon this finding, the Court determines that it is in the best interest of [the Child] that her [Father] shall be designated as the primary residential parent[.]

Although the trial court has indicated which section 36-6-106 factors favor Mother and Father respectively, there are no factual findings whatsoever to underpin this allocation. As such, we are left to wonder as to the trial court's reasoning for its allocation of each factor. Such a scenario clearly defeats the purpose of mandatory factual findings under Rule 52.01. *See* ***Gooding***, 477 S.W.3d at 778 ("When the trial court does not find the facts specially or state separately its conclusions of law, we are left to wonder as to the factors employed in crafting the parenting schedule, and it inevitably leads to decisions delaying the resolution of issues on appeal and prolonging the uncertainty of the children's residency."). Moreover, the trial court's order makes clear that it engaged in just the type of "rote examination" and bare calculation of the number of factors in favor of each parent that has been discouraged by this Court. ***Solima***, 2015 WL 4594134, at *4. The sparse nature of the trial court's order in this particular case is problematic for several reasons.

First, although it is true that the trial court has allocated each factor and that more factors are seemingly favorable to Father, it is also true that "depending upon the

circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the [best interest] analysis." ***Solima***, 2015 WL 4594134, at *4; *see also* ***Paschedag***, 2017 WL 2365014, at *5 (noting that custody litigation should not be decided "by simply tallying up wins and losses."). Here, there is simply no way to discern which factors weigh more heavily in light of the needs and situation of this particular child. Because "the relevancy and weight to be given to each factor depends on the unique facts of each case[,]" it would  certainly facilitate our review to know which factors were of particular importance to the trial court in this case. ***Solima***, 2015 WL 4594134, at *4. Even assuming, arguendo, that more of the factors in fact favor Father, this does not foreclose the possibility that one factor favoring Mother is of overriding importance under these particular circumstances. ***Id.*** ("[D]epending upon the significance of certain facts, a single factor can control the outcome of this determination."); *see also* ***Paschedag***, 2017 WL 2365014, at *4 ("A best interest analysis could turn on a single factor."); ***Harmon v. Harmon***, No. W2017-02452-COA-R3-CV, 2018 WL 6192233, at *18 (Tenn. Ct. App. Nov. 27, 2018) (noting that "[t]his case is exceptionally close in that many of the best  interest factors are neutral[,]" but ultimately concluding that continuity and the child's stability in her current environment weighed more heavily under the specific circumstances).

Moreover, it is impossible for us to review whether the trial court's determination of the factors is actually supported by the record, as there is no indication in the order as to what evidence supports each factor. We are, however, troubled that at least one of the trial court's factor allocations appears unsupported by the record. Specifically, the trial court's order states that factor fourteen is inapplicable to the case-at- bar.[4] However, at trial, Mother testified as to her belief that the Child would be better off in Mother's primary care because Mother's work schedule is more regular than Father's. Indeed, Mother takes great issue with the fact that during Father's parenting time, the Child is often in the care of friends or relatives rather than being with Father. Father did not rebut these allegations at trial, and Mother continues to make this argument on appeal. Given this argument, the trial court's determination that this factor is inapplicable, unsupported as it is by any factual findings, is perplexing; on the contrary, without the benefit of the trial court's reasoning otherwise, it appears to this Court that this factor should have been quite important in the best interest analysis. Unfortunately, there is nothing in the trial court's order explaining why factor fourteen was deemed inapplicable here despite the abundance of testimony on this issue at trial. Although we are tasked with determining whether the evidence preponderates in favor of or against the trial court's factual findings, and ultimately whether the trial court abused its discretion in naming Father primary residential parent, we are simply unable to do so under these circumstances. *See generally* ***Gooding***, 477 S.W.3d at 778–783 (discussing how the lack of findings impacts the abuse of discretion standard). Indeed, we have no way of knowing how the applicable legal standards were applied here.

---

[4] Section 36-6-106(a)(14) addresses each parents respective employment schedule.

Finally, we point out that the foregoing issues have made it difficult for the parties to argue their respective positions on appeal. For example, Mother states at the outset of her argument that "[t]he trial court did not give any explanation of its findings or how each factor applied in the instant case." Mother goes on to discuss each of the best interest factors in light of what she believes the trial court "implied" by the contents of its order. Essentially, while Mother seems to have done her best to discern what the trial court intended with its allocation of the best interest factors, Mother has been limited to pontificating as to what she believes the trial court's findings of fact are. Respectfully, this type of speculative argument is not particularly helpful in our review of such a fact-sensitive matter. To that point, Father repeatedly alleges in his appellate brief that Mother has failed to show that the evidence preponderates against the trial court's findings underpinning the best interest analysis. Father's argument essentially requires that Mother argue against herself by first establishing what she believes the trial court considered with regard to each factor and then arguing against those facts. Tennessee law, in particular Rule 52.01, simply does not place such a heavy burden on parties appealing from decisions rendered in bench trials.

We have previously held that "the absence of an explicit discussion of each factor does not mean that they were not considered." *Keisling*, 196 S.W.3d at 723. The opposite occurred in this case. While the trial court cursorily mentions each factor, it provides no factual basis whatsoever for its decision, either as to each individual factor or as to its overall decision to name Father primary residential parent. Respectfully, this bare order does not comply with Rule 52.01, the caselaw applying this rule in the child custody context, or the high judicial function required of Tennessee trial judges. *See Smith*, 439 S.W.3d at 312. In light of the insufficiency of the trial court's order designating Father the primary residential parent, we conclude that this matter should be vacated and remanded in order for the trial court to enter an order that is adequate for appellate review. In doing so, we again encourage the trial court to "be as precise as possible in making child custody findings' in order to facilitate meaningful appellate review." *Belardo*, 2013 WL 5925888, at *7. Because we have determined that the decision of the trial court should be vacated and remanded, the remaining issues raised on appeal are pretermitted.

### CONCLUSION

The judgment of the Crockett County Chancery Court is vacated and remanded for further proceedings consistent with this Opinion. Costs of this appeal are assessed against the Appellee, William Michael Grissom.

_____
J. STEVEN STAFFORD, JUDGE