IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 1, 2021

## CIARA DAWN BEATY v. ADAM SCOTT BEATY

**Appeal from the Chancery Court for Pickett County**
No. 4257      Ronald Thurman, Judge
_____

**No. M2020-00476-COA-R3-CV**
_____

This is an appeal from a divorce involving one minor child. In fashioning an initial parenting schedule, the trial court named the mother primary residential parent of the parties' minor child and entered a parenting plan awarding 242 days of parenting time to the mother and 123 days to the father. The father appealed. Because we conclude that the trial court's order regarding the residential parenting schedule does not contain sufficient findings of fact such that meaningful appellate review is possible, we vacate the order as to the parenting plan and remand for findings of fact and conclusions of law to facilitate appellate review.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Vacated; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Melanie Lane, Jamestown, Tennessee, for the appellant, Adam Scott Beaty.

William A. Cameron and Bradford G. Wood, Jr., Cookeville, Tennessee, for the appellee, Ciara Dawn Beaty.

## OPINION

## I.      BACKGROUND

S.B. ("the child") was born in February of 2017 during the marriage of Ciara Dawn Beaty ("Mother") and Adam Scott Beaty ("Father"). On April 2, 2018, Mother and Father separated. Mother left the marital home and took the child with her. Her new residence was not far from Father's. Mother filed a complaint for divorce on June 18, 2018, and

proposed a parenting plan naming her the primary residential parent who would exercise 300 days of parenting time per year with the child. In his answer and counter-complaint, Father requested to be designated primary residential parent and to share equal parenting time with Mother. During the separation, the parties informally agreed that Father could enjoy visitation with the child roughly one day every other week, two days the next week, and every other weekend. A month before trial, the parties began following an agreed temporary parenting plan which specified that Father would exercise parenting time on Tuesday afternoons until Thursday mornings and every other Friday evening through Sunday evening.

The case proceeded to a trial held on October 28, 2019. By then, the child was over two years old. Mother and Father each testified. The testimony showed that Mother stayed at home to care for the child during the first six months of his life. At that time, Father worked six days per week, 67 hours weekly. He testified that he adopted this work schedule so that the family could pay their bills and so that Mother could stay home with the child. Father testified that he fed and diapered the child during the first year, including during the nighttime hours, just as Mother did. He conceded that Mother bathed the child more often than he did. During the parties' separation, Father's girlfriend moved in with him. Mother related that she and Father's girlfriend do not get along, and that she does not wish to hear any parenting advice from the girlfriend. Father's girlfriend does not have a criminal or substance abuse history, and she participates in the child's care. During the pendency of the divorce, Father paid child support to Mother and paid for half of the child's daycare fee. At the time of trial, the child spoke only five words. Father noted this developmental issue with concern. In response, Father researched professional help and worked with the child on reading and vocabulary. Both parents potty trained the child. Father explained why he had agreed to a temporary parenting plan that limited his parenting time:

Q. So you and [Mother] separated April of 2018; correct?

A. Yes.

Q. So [the child] was just a little over a year old; right?

A. Yes.

Q. Did you make any effort to get more parenting time with him while the divorce was pending?

A. Yes.

Q. What did you do?

A. I tried to communicate with [Mother] to give me more days. And then a

month ago, we actually put in a temporary parenting plan that we agreed on.

Q. Have you followed that?

A. Yes.

Q. Was that plan what you wanted?

A. No.

Q. Why did you agree to it?

A. It was the only thing I felt like I was allowed to have.

Q. Why did you feel like that was all you were allowed to have?

A. I feel like she doesn't want me to see [the child] because she thinks I am a bad father.

Q. Do you see yourself as a bad father?

A. No.

Q. Do you want to have a close relationship with [the child]?

A. I do.

Q. Do you understand that he needs a close relationship with his mother as well as with you?

A. Yes.

Mother testified that she "would like for [Father] to have [parenting time] every other weekend, and [that she] would prefer it go back to one day every week." She further requested the trial court to award parenting time to Father "every other weekend and one day through the week" because "he has to, I guess, have some visitation with his child." Mother stated, "I feel that is enough visitation for what I feel comfortable with for my son since I don't know if [Father] is actually watching him, or taking care of him, or providing for him the best he needs to be provided for." Mother admitted that the amount of parenting time she felt was enough for Father would not be enough for her to maintain a close relationship with the child. When asked to explain, Mother stated, "[b]ecause I don't want my son to be taken away from me."

By order entered on February 24, 2020, the trial court declared the parties divorced on stipulated grounds. As to the residential parenting schedule and primary residential parent, the trial court ordered as follows:

> [Mother] shall be the primary residential custodian for the minor child []. The attached Permanent Parenting Plan of the parties accurately reflects the Court's ruling regarding the minor child. It is specifically ordered that neither party shall have another, non-relative party present with them for the exchange of the minor child.

Pursuant to the parenting plan entered by the trial court, Mother was awarded 242 days of parenting time and Father was awarded 123 days. Father appealed.

## II. ISSUES

Father raises three issues on appeal:

1. Whether the trial court erred in designating Mother as the primary residential parent.

2. Whether the trial court erred in crafting the residential parenting schedule.

3. Whether the trial court erred in prohibiting Father's girlfriend from being present at the exchanges of the child.

## III. STANDARD OF REVIEW

In non-jury cases such as this one, we review the trial court's factual findings de novo upon the record, affording them a presumption of correctness unless the evidence preponderates otherwise. *See* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review questions of law de novo, affording the trial court's decision no presumption of correctness. *Armbrister*, 414 S.W.3d at 692 (citing *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012)).

Trial courts have "broad discretion in formulating parenting plans" because they "are in a better position to observe the witnesses and assess their credibility." *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (citing *Armbrister*, 414 S.W.3d at 693). "A trial court's broad discretion on custody matters extends to the question of which parent should be named primary residential parent." *Grissom v. Grissom*, 586 S.W.3d 387, 391 (Tenn. Ct. App. 2019). On appeal, we review a trial court's decision regarding the details of a residential parenting schedule for an abuse of discretion. *Armbrister*, 414 S.W.3d at 693

(citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)). "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). "A trial court abuses its discretion in establishing a residential parenting schedule 'only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Armbrister*, 414 S.W.3d at 693 (quoting *Eldridge*, 42 S.W.3d at 88).

## IV. DISCUSSION

The second issue raised by Father is dispositive to this appeal. When fashioning a permanent parenting plan, trial courts are required to "consider the factors listed in Tennessee Code Annotated section 36-6-106(a)(1)–(15) to ascertain the best interest of the child, in determining a residential schedule and naming a primary residential parent." *Sullivan v. Sullivan*, No. M2018-01776-COA-R3-CV, 2019 WL 4899760, at *4 (Tenn. Ct. App. Oct. 4, 2019) (citing Tenn. Code Ann. §§ 36-6-106(a) and -404(b)). "The paramount concern in establishing a permanent parenting plan is the best interest of the children." *Maupin v. Maupin*, 420 S.W.3d 761, 770 (Tenn. Ct. App. 2013). Section 36-6-106(a) directs courts to order custody arrangements that permit the "maximum participation possible" for each parent. *See* Tenn. Code Ann. § 36-6-106(a).

The best interest determination "is a fact-sensitive inquiry." *Steakin v. Steakin*, No. M2017-00115-COA-R3-CV, 2018 WL 334445 at *5 (Tenn. Ct. App. Jan. 9, 2018). The determination "'does not call for a rote examination of each of [the relevant] factors and then a determination of whether the sum of the factors tips in favor of or against the parent.'" *Id*. (quoting *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005)). Rather, "'[t]he relevancy and weight to be given each factor depends on the unique facts of each case.'" *Id*. The trial court is directed to consider the following factors when conducting the best interest analysis:

> (1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;
>
> (2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's

- 5 -

parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). . . .;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request.

The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-106(a).

At trial, Father requested that the court order equal parenting time on a week on/week off schedule. On appeal, he argues that "[t]he trial court failed to maximize Child's time with each parent, and failed to apply the statutory factors to the evidence presented at trial." Father maintains that analyzing the evidence "using the statutory factors, it is clear that Child would benefit from having equal parenting time with Father." Unfortunately, our review is hampered by the trial court's failure to make specific findings of fact and conclusions of law regarding the decision to limit Father's parenting time. The trial court's order did not apply the statutory factors that may have guided the court in crafting the residential parenting schedule. Further, the trial court did not find that the parenting plan was in the child's best interest. In fact, the only mention of best interest in the record is the trial court's finding, made in its oral ruling, that exchanging the child at 3:00 a.m. would not serve his best interest.[1] The lack of explanation in the trial court's order makes it difficult to discern how or why the court calculated parenting time to arrive at the totals of 242 days for Mother and 123 days for Father.

Tennessee Rule of Civil Procedure 52.01 requires that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." When a trial court does not explain the basis of its ruling, we are hampered in performing our reviewing function, and we may remand the case with instructions to make requisite findings of fact and conclusions of law and enter judgment accordingly. *See In re Noah J.*, No. W2014-01778-COA-R3-JV, 2015 WL 1332665 at *5–6 (Tenn. Ct. App. Mar. 23, 2015). "One remedy appellate courts typically apply when a trial court's factual findings fail to satisfy the Rule 52.01 requirement is to remand the case to the trial court with directions to issue sufficient findings and conclusions." *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013).

In sum, it is unclear from the record before us whether the trial court considered the child's best interest and fashioned "a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the

---

[1] On four occasions prior to trial, the parties exchanged the child at 3:20 a.m. This practice had been abandoned by the time of trial.

[statutory factors]." Tenn. Code Ann. § 36-6-106(a). This is a case where we are "left to wonder" about the trial court's reasoning. *Grissom*, 586 S.W.3d at 397. Accordingly, we vacate the trial court's order and remand for sufficient findings of fact and conclusions of law to facilitate our appellate review of the issues presented. The remaining issues raised by Father on appeal are pretermitted. We also recognize that time has marched on during this litigation. At the time of the trial court's decision, the child was a toddler. The child is now four years old, so the trial court may, in its discretion, consider additional evidence to ensure that the parenting plan is based on the child's and parties' current circumstances. *See, e.g.*, *Kathryne B.F. v. Michael B*., No. W2013-01757-COA-R3-CV, 2014 WL 992110, at *7 (Tenn. Ct. App. Mar. 13, 2014).

## V.     CONCLUSION

The judgment of the trial court is vacated as to the parenting plan. The case is remanded for entry of findings of fact and conclusions of law. Costs of the appeal are taxed one half to the appellant, Adam Scott Beaty, and one half to the appellee, Ciara Dawn Beaty.

_____
JOHN W. McCLARTY, JUDGE