IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 1, 2024

**IN RE JORDAN L. ET AL.**

**Appeal from the Chancery Court for Carter County**
**No. C220263        John C. Rambo, Chancellor**

_____

**No. E2023-01829-COA-R3-PT**

_____

This appeal concerns the termination of a mother's parental rights to two children. The trial court determined that the mother had abandoned the children by willful failure to make reasonable payments toward the support of the children and ruled that it was in the children's best interests for the mother's rights to be terminated. Because we conclude that clear and convincing evidence supports the ground of abandonment by failure to support and that clear and convincing evidence exists to support that termination of the mother's parental rights is in the best interests of the children, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Christa R. Morton, Johnson City, Tennessee, for the appellant, Chelcey R.

Russell Kloosterman, Johnson City, Tennessee, for the appellee, Mariah M.

**OPINION**

**BACKGROUND AND PROCEDURAL HISTORY**

R.R. and J.L. were born to Chelcey R. ("Mother") in October 2015 and May 2014, respectively.[1] Both R.R. and J.L. (collectively referred to as "the Children") were present when Mother and their biological father, James L.,[2] were arrested on January 18, 2018.

---

[1] This Court has a policy of protecting the identities of children involved in parental termination cases and accordingly abbreviates certain names appearing in the Opinion.

[2] Although the parental rights of the Children's biological father were terminated as part of the

Mariah M. ("Mariah"), a biological cousin to the Children, received physical custody of the Children on January 18, 2018, and subsequently was awarded legal custody by court order, which she shared with Phyllis C. ("Phyllis"), another family relative.[3] By the time of trial, the Children had remained in Mariah's custody for approximately five years. On September 26, 2022, Mariah filed a petition with the Chancery Court for the First Judicial District at Carter County, Tennessee ("the trial court") to terminate the parental rights of Mother, alleging that she had abandoned the Children by failure to visit and failure to support. Mariah also alleged that it was in the Children's best interests for Mother's parental rights to be terminated. In the interim between Mother's loss of physical custody of the Children and the date Mariah filed her petition, Mother had been incarcerated several times and for various periods of time.

At trial, Mariah testified that, when she received physical custody of the Children, they had been living in a car and did not have clothes, car seats, or spare diapers. Amber V., a relative of the Children, testified that the Children were "out of control" when under the care of Mother. Several other witnesses also testified to the condition of the Children while under the care of Mother.

Conversely, there was testimony evidencing that the Children's welfare substantially improved under the care of Mariah, including testimony that the Children's academic progress had been largely positive. Although J.L. suffers from a sensory processing disorder, the record demonstrates that he has received and responded well to specialized educational services.

Upon the conclusion of the trial, the trial court rendered written findings of fact and conclusions of law. Although the trial court found in its order that there was *not* clear and convincing evidence to establish Mother's abandonment of the Children by failure to visit, it concluded that there was clear and convincing evidence that Mother had abandoned the Children by failure to support. In assessing the evidence concerning Mother's failure to support the Children, the trial court determined that "there was no money offered and no gifts made to the children" during the relevant statutory time period. Moreover, the court noted that Mother had several opportunities to provide support when she visited with the Children on three separate occasions during the relevant time period, and it further found that Mother had "never financially supported" the Children. Upon its conclusion that one ground for termination had been sufficiently established, the trial court additionally determined that clear and convincing evidence supported the conclusion that the termination of Mother's parental rights was in the best interests of the Children.

This appeal followed.

---

judgment at issue in this appeal, he did not appeal the termination or otherwise participate in this appeal.

[3] Mariah testified that she shared legal custody of the Children with Phyllis but that the Children have only spent the occasional night or weekend with Phyllis.

**ISSUES PRESENTED**

In her appellate brief, Mother presents several issues for this Court's review, which we restate as follows:

I.    The four-month period for determining whether there has been a violation of the ground of abandonment by failure to support is inaccurate and inconsistent, thereby not meeting the clear and convincing evidence standard.

II.   There is not clear and convincing evidence to support a finding of abandonment by failure to support.

III.  There was not clear and convincing evidence that termination of Mother's parental rights was in the best interests of the Children.

IV.   The trial court did not err in finding that Mother had at least three visits during the requite timeframe and that visits were halted due to the actions of the custodians.[4]

Although it appears that Mother's briefing challenges all grounds for termination actually relied upon by the trial court, as well as its best interests determination, we would be obligated to consider such matters in any event. Indeed, consistent with the mandate from the Tennessee Supreme Court in *In re Carrington H.*, we are required to "review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d 507, 525-26 (Tenn. 2016).

**STANDARD OF REVIEW**

"A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions." *Id.* at 521 (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Although this right is fundamental and superior to claims of other persons and the government, it is not absolute." *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007). "It continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

---

[4] As to Mother's fourth issue on appeal, the trial court determined that Mother did not abandon the Children by failure to visit. In her appellate brief, Mother argues that the trial court did *not* err in this determination. Mariah, in her appellate brief, does not challenge the trial court's determination in this regard. Because this determination is not in controversy and was not a ground upon which Mother's rights were terminated, we conclude there is nothing for this Court to review concerning this issue.

- 3 -

However, "[w]ell-defined circumstances" exist "under which a parent's rights may be terminated" *In re Roger T.*, No. W2014-02184-COA-R3-PT, 2015 WL 1897696, at *6 (Tenn. Ct. App. Apr. 27, 2015). "Parties seeking termination of parental rights must first prove the existence of at least one of the statutory grounds for termination listed in Tennessee Code Annotated § 36-1-113(g). If one or more statutory grounds for termination are shown, they then must prove that terminating parental rights is in the child's best interests." *In re Bailey J.*, No. E2021-00446-COA-R3-PT, 2021 WL 5575788, at *3 (Tenn. Ct. App. Nov. 30, 2021) (internal citations omitted). Both the grounds for termination and a court's best interests determination must be established by clear and convincing evidence. *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020) (noting that rights may be terminated if a party proves, by clear and convincing evidence, that at least one ground exists and that termination is in the best interests of the child). "Clear and convincing evidence is evidence that eliminates any substantial doubt and that produces in the fact-finder's mind a firm conviction as to the truth." *In re M.A.B.*, No. W2007-00453-COA-R3-PT, 2007 WL 2353158, at *2 (Tenn. Ct. App. Aug. 20, 2007). Due to the heightened burden of proof, we employ the following standard of review:

> First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights.

*In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

## DISCUSSION

We first turn to Mother's issue concerning the dates of her incarceration in relation to the court's determination that Mother abandoned the Children through failure to support. "Abandonment by the parent" is one of the statutory grounds upon which the termination of parental rights may be based. Tenn. Code Ann. § 36-1-113(g)(1). Among the various alternative definitions of abandonment, "[o]ne definition applies in cases in which the parent is incarcerated or had been incarcerated within the four-month period before the termination petition was filed." *In re Bailey J.*, 2021 WL 5575788, at *3 (citing Tenn. Code Ann. § 36-1-102(1)(A)(iv)). A parent who had been incarcerated during any part of the four months preceding the filing of the termination petition abandons a child by failing to support "during an aggregation of the first one hundred twenty (120) days of nonincarceration immediately preceding the filing of the action." Tenn. Code Ann. § 36-1-102(1)(A)(iv).

Here, the trial court aggregated the first 120 days of Mother's nonincarceration

- 4 -

immediately preceding the filing of the petition and employed these periods as the relevant window of time to assess whether Mother abandoned the Children. There is no dispute on appeal that the dates employed by the trial court are the correct dates. Mother, however, attempts to make an issue out of the fact that, at one point during the termination proceedings, the parties stipulated to the veracity of certain dates concerning Mother's history of incarceration that were in fact inaccurate. Respectfully, this argument does not in any way establish that the trial court committed any error. That the parties were, at one time, mistaken as to certain dates does not mean that the trial court's order was inaccurate. In this respect, we note again that there is no dispute on appeal that the dates employed by the trial court are the correct ones. Indeed, Mother acknowledges in her brief that the trial court's final order reflects the correct dates, and Mariah, in her appellee's brief, agrees that the correct dates were included by the trial court in its final order. Because no one disputes the accuracy of the dates used by the trial court to calculate the aggregated 120 days of nonincarceration in its judgment, we conclude that there is no error on this issue for this Court to review.

We next assess whether the ground of abandonment by failure to support was proven by clear and convincing evidence. At trial and on appeal, Mother contends that her failure to support was not willful and, to that end, that Mariah and Phyllis had previously refused Mother's offers of support. From our review of the record, the trial court considered the previous refusals of Mother's offers of support but found that no such refusals occurred during the relevant 120-day time period. Moreover, the trial court's judgment highlighted that Mother visited with the Children on three separate weekends during the 120-day time period but failed to make any offer of support during those visits or at any other time throughout the relevant time period. Although we observe that the record contains testimony concerning some evidence of Mother providing in-kind support in the past, Tennessee Code Annotated section 36-1-102(1)(A)(iv) is clear that we must constrain our analysis to the relevant 120-day time period. *See In re Navada N.*, 498 S.W.3d 579, 593-94 (Tenn. Ct. App. 2016).

The trial court found that, during the relevant time period, Mother did not make any payment of support for the benefit of the Children, nor did Mother offer to make any payment. Although Mother claims she failed to make a payment because the Children's custodians previously refused to accept payment, every "parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children[.]" Tenn. Code Ann. § 36-1-102(H). Furthermore, a "custodial parent's or third party's conduct does not excuse a biological parent's willful failure to support or visit unless that conduct actually prevents or significantly hinders the parent from doing so." *In re M.L.D.*, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005). Here, Mother visited with the Children three times during the relevant 120-day period and yet, failed to make, or even offer, any support payments. The trial court found that these visitations presented an opportunity to render a support payment, but Mother failed to do so. Moreover, the trial court found that Mother failed to prove that her failure to support

the Children during the 120-day period was not willful. Having reviewed the record transmitted to us on appeal, we agree with the trial court that this ground for termination was proven by clear and convincing evidence.

Having determined that clear and convincing evidence supports the existence of at least one statutory ground to terminate Mother's rights, we next consider whether the termination of such rights was in the best interests of the Children. Tenn. Code Ann § 36-1-113(c)(2). Tennessee Code Annotated section 36-1-113(i) provides twenty enumerated factors for a court to consider, but the statute does not require that each factor favor termination. *In re Keira F.*, No. M2023-01184-COA-R3-PT, 2024 WL 3549198, at \*8 (Tenn. Ct. App. July 26, 2024) (citing *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005)). Instead, "the relevancy and weight of each factor will be unique to each case[]," and "in certain circumstances, the consideration of one factor may be determinative." *Id.* (citing *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005)). "Facts relevant to a child's best interests need only be established by a preponderance of the evidence, although [the petitioner] must establish that the combined weight of the proven facts amounts to clear and convincing evidence that termination is in the child's best interests." *In re Carrington H.*, 483 S.W.3d at 535 (citing *In re Kaliyah S.*, 455 S.W.3d 533, 535 (Tenn. 2015)).

Tennessee Code Annotated section 36-1-113(i), which contains the bests interests factors, specifically provides as follows:

(i)(1) In determining whether termination of parental or guardianship rights is in the best interest of the child, the court shall consider all relevant and child-centered factors applicable to the particular case before the court. Those factors may include, but are not limited to, the following:

(A) The effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority;

(B) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition;

(C) Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs;

(D) Whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment;

(E) Whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive

- 6 -

relationship with the child;

(F) Whether the child is fearful of living in the parent's home;

(G) Whether the parent, parent's home, or others in the parent's household trigger or exacerbate the child's experience of trauma or post-traumatic symptoms;

(H) Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent;

(I) Whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage;

(J) Whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner;

(K) Whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions;

(L) Whether the department has made reasonable efforts to assist the parent in making a lasting adjustment in cases where the child is in the custody of the department;

(M) Whether the parent has demonstrated a sense of urgency in establishing paternity of the child, seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest;

(N) Whether the parent, or other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the child or any other child or adult;

(O) Whether the parent has ever provided safe and stable care for the child

or any other child;

(P) Whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive;

(Q) Whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive;

(R) Whether the physical environment of the parent's home is healthy and safe for the child;

(S) Whether the parent has consistently provided more than token financial support for the child; and

(T) Whether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child.

Tenn. Code Ann. § 36-1-113(i).

Here, the trial court highlighted the Children's stability under the care of Mariah and evidence of their close bond with her. It found that Mariah had "provided the home that has met the Children's emotional and psychological needs." Moreover, in consideration of the evidence demonstrating one of the Children's struggles with a sensory processing disorder, the trial court emphasized that the stability and care provided by Mariah was critical for his well-being. It further found that, while the Children understand Mother to be their biological mother, they consider Mariah to actually be their mother.

Conversely, the trial court highlighted that, in the five years since Mother lost physical custody of the Children, she has not demonstrated that she has the capability of providing for their needs. Furthermore, it found Mother's interaction with the Children had been inconsistent since she lost physical custody, which has resulted in a limited relationship between Mother and the Children.

Ultimately, the trial court determined that six factors, specifically factors (A) through (E) and (H), favored termination, whereas all other factors were either neutral, inapplicable, or did not favor termination. On appeal, Mother argues that she could have improved her relationship with the Children and better demonstrated an ability to care for them if there had not been numerous communication issues with Mariah and Phyllis. However, we observe that Mother's history of incarceration played a large role in the deterioration of Mother's relationship with the Children. Indeed, since Mother lost physical custody of the Children on January 18, 2018, she has been incarcerated a number of times

including as recently as June 30, 2022. Although the trial court found that Mother had since taken steps to change her behavior that led to her incarcerations, it highlighted that Mother had neither been consistently engaged in the Children's lives nor financially supportive of them for the preceding five years. Conversely, it is apparent that Mariah had been successfully providing for the Children during this time. Under these circumstances, we agree with the trial court that there was clear and convincing evidence that it is in the Children's best interests to terminate Mother's parental rights.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_s/ Arnold B. Goldin_____
ARNOLD B. GOLDIN, JUDGE
